Ruth A. OLIVE, Plaintiff,

v.

AMERICAN EXPRESS LONG TERM DISABILITY BENEFIT PLAN; et al., Defendants.

No. CV 01–02520 DDP(RCX).

United States District Court, C.D. California.

Jan. 30, 2002.

---

Esther R. Sorkin, Allen R. Ball, Mona Andrea Sampson, Ball & Yorke, Ventura, CA, for plaintiff.

Diana Tabacopoulos, Corrine Chandler, Seyfarth Shaw, Los Angeles, CA, Timothy M. Freudenberger, Leigh A. White, Carlton DiSante & Freudenberger, Irvine, CA, for defendants.

## ORDER GRANTING THE PLAINTIFF'S MOTION DETERMINING THAT THE STANDARD OF REVIEW IS DE NOVO

PREGERSON, District Judge.

This matter comes before the Court on the plaintiff's motion for an order determining that the standard of review in the instant ERISA case is *de novo*. After reviewing and considering the materials submitted by the parties and hearing oral argument, the Court grants the motion.

### BACKGROUND

On March 16, 2001, the plaintiff Ruth A. Olive filed a complaint against the defendants American Express Long Term Disability Benefit Plan and Metropolitan Life Insurance Company ("MetLife") (collectively the "defendants"). The action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). The plaintiff alleges (1) benefits due under an ERISA plan pursuant to 29 U.S.C. § 1132(A)(1)(B); and (2) restitution and restoration for breach of fiduciary duty under ERISA pursuant to

29 U.S.C. § 1104(a)(1)(A)(I). (First Am. Compl. at 1.)

The plaintiff was employed by American Express Corporation ("American Express"). As an employee, the plaintiff became a participant in American Express's employee welfare benefits plan (the "Plan"). The Plan is administered by MetLife. MetLife is also the insurance company that pays any benefits under the Plan.

In December 1998, the plaintiff underwent abdominal surgery. As a result, the plaintiff was away from work due to a disability.

On June 28, 1999, MetLife sent the plaintiff a letter informing her that she was enrolled for Long Term Disability coverage and may be eligible for Long Term Disability benefits ("LTD" benefits). (Pl's Mtn. Ex. C.) The letter also explained the procedure for applying for LTD benefits, as well as enclosed the requisite forms. (*Id.*) In closing, the letter requested that the plaintiff apply for Social Security Disability benefits.. (*Id.*) Subsequently, the plaintiff filled out the LTD benefit forms and submitted the required information. (*Id.*, Ex. D.)

On October 18, 1999, MetLife sent the plaintiff a letter denying her claim for LTD benefits stating that "your claim for benefits for Long Term Disability does not meet the definition of disability" under the Plan (the "initial denial letter"). (Pl's Mtn. Ex. E.)

On December 7, 1999, the plaintiff requested a review of her disability. (Pl's Mtn. Ex. F.) The plaintiff also provided additional medical reports regarding her disability. (*Id.*)

On February 25, 2000, MetLife sent the plaintiff a letter regarding her appeal of the initial denial of LTD benefits (the "denial of appeal" letter). (Pl's Mtn. Ex. H.) The letter indicated that the decision to

deny LTD benefits was appropriate and would remain in effect. (*Id.* at 461.) The letter further indicated that it constituted MetLife's final determination on appeal and completed the full and final review of the denial of benefits for the claim as required by the Plan. (*Id.*)

On April 25, 2000, the plaintiff sent MetLife a letter requesting a reconsideration of the appeal, as well as enclosing additional documents for MetLife's review. (Pl's Mtn. Ex. I.) On May 5, 2000, MetLife informed the plaintiff that the Plan did not allow for a second appeal. (*Id.*) However, the documents submitted with the plaintiff's April 25 letter were remanded to the plaintiff's case manager. (*Id.*) On May 16, 2000, the plaintiff's case manager informed the plaintiff that the documents had been reviewed, however, the information did not alter the denial of the claim. (Pl's Mtn. Ex. J.)

On February 22, 2001, the plaintiff sent MetLife a letter stating that she had been found disabled by the Social Security Administration. (Pl's Mtn. Ex. J.) On March 7, 2001, MetLife informed the plaintiff that this information did not change the original decision. (*Id.*)

Before the Court is the plaintiff's motion requesting an order determining that the standard of review in the instant ERISA case is *de novo*.

## DISCUSSION

**A.** *The Standard Of Review For ERISA Benefit Determinations*

■ "The standard with which the Court must review the benefits eligibility decision depends upon how much discretion the Plan grants an administrator or fiduciary to determine eligibility for bene-

fits or to construe the terms of the plan." *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan,* 63 F.Supp.2d 1145, 1154 (C.D.Cal.1999) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). When an ERISA plan vests its administrator with such discretion, as the Plan does in the instant case, the district court ordinarily reviews the administrator's decision for abuse of discretion, rather than performing a de novo review of the record. *Id.* (citing *Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech., Inc.,* 125 F.3d 794, 797 (9th Cir.1997)).

■ Yet even when the plan vests the administrator with discretion, the degree of deference associated with this standard of review may be affected if a plaintiff makes a sufficient showing that the administrator has a conflict of interest. *Snow v. Standard Ins. Co.,* 87 F.3d 327, 330 (9th Cir.1996). As such, the court must inquire whether an apparent conflict of interest exists because of an administrator's dual role as both the funding source and the administrator of the plan. *Jordan,* 63 F.Supp.2d at 1154. Standing alone, an apparent conflict does not affect the ultimate standard of review. *McDaniel v. The Chevron Corp.,* 203 F.3d 1099, 1108 (9th Cir.2000). It does, however, require the court to look further into the plan administrator's dual role by applying the "less deference" test.[1] *Id.*

### 1. *The two-step "less deference" test*

■ First, the court must determine whether the affected beneficiary has provided material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administra-

**1.** The "less deference" test is a burden shifting test that is applied by the court when making the determination of whether a conflict is serious. *McDaniel,* 203 F.3d at 1108

n. 6. It is a two-tiered test, which ultimately can give rise to only a *de novo* standard of review or a traditional abuse of discretion standard of review. *Id.*

tor's fiduciary obligations to the beneficiary. *Regula v. Delta Family–Care Disability Survivorship Plan,* 266 F.3d 1130, 1145 (9th Cir.2001). If not, the court applies the traditional abuse of discretion review.

However, by providing material, probative evidence of a conflict, the plan beneficiary creates a rebuttable presumption that the plan's decision was in fact a dereliction of its fiduciary responsibilities. *Id.* The plan then bears the burden of rebutting the presumption by producing evidence to show that the conflict of interest did not affect its decision to deny or terminate benefits. *Id.* If the plan fails to carry its burden, then the court reviews *de novo* its decision denying benefits. *Id.*

B. *Conflict Of Interest*

It is undisputed that MetLife has an apparent conflict of interest because, as the insurance company, it had to pay the benefits it awarded as Plan Administrator. *See e.g., Jordan,* 63 F.Supp.2d at 1154. The question is whether this apparent conflict of interest affected MetLife's evaluation of the plaintiff's claim.

As noted above, the plaintiff bears the initial burden of providing material, probative evidence beyond the apparent conflict that tends to show MetLife's self-interest caused a breach of its fiduciary duties. Here, the plaintiff argues that MetLife's failure to specify the information that was needed to perfect her claim on appeal is material, probative evidence that tends to show MetLife's self-interest caused a breach of its fiduciary duties.

1. *MetLife's Failure To Specify The Information That The Plaintiff Needed To Submit To Perfect Her Claim*

a. *The plaintiff's material, probative evidence of a conflict*

The plaintiff argues that there are sufficient procedural flaws in the handling of her claim that "tend to show that the fiduciary's self-interest" affected the decision regarding payment of benefits. (Pl's Mtn. at 9.) Specifically, the plaintiff contends that the initial denial letter did not comply with the ERISA regulations mandating that a claimant be told of the information needed to perfect the claim. (*Id.* at 10.)

Under ERISA, adequate notice in writing must be provided to any participant whose benefit claim has been denied. 29 U.S.C. § 1133(1). Specifically, ERISA mandates that every employee benefit plan shall:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

Here, the initial denial letter states that "[w]e have determined that your claim for benefits for Long Term Disability does not meet the definition of disability" under the Plan. (Def's Opp. Ex. 2 at 258.) As a preliminary matter, the letter sets forth the criteria the plaintiff must meet to be considered "totally disabled" under the Plan:

You are considered totally disabled and eligible to apply for LTD Benefit Plan benefits if, during the six-month waiting period and the first two years that benefits are payable, you are unable to perform any and every duty of your own

occupation due to a medically determined physical or mental impairment caused by sickness, disease, injury or pregnancy. You must require the regular care and attendance of a doctor.

(*Id.*) Next, the letter lists the information used for reviewing the plaintiff's claim, stating "[a]ll available documentation has been carefully reviewed ... [t]hese records include but are not necessarily limited to the following" information. (*Id.*) Then, the letter explains why the plaintiff's claim was denied. For example, the letter states:

Your medical records indicate that you have had several surgeries and a serious infection post-operatively. At this time, Dr. Bury, the surgeon, has discharged you and will not fill out any paperwork. Your primary care physician, Dr. Warwar, is not seeing you for any post-op care. He stated that you're [sic] other medical conditions, hypertension, hyperlipidemia, and coronary heart disease are not disabling. You would have been eligible for Long Term Disability as of July 8, 1999. Based on this information there does not appear to be any limitations or restrictions that would have prevented you from performing your occupation at American Express as of that date. In summary, Ms. Olive, we find the information reviewed does not support a condition of such severity to remove from you the option or choice of returning to your occupation.

(*Id.* at 259.) Finally, the letter concludes by informing the plaintiff of the review process, as well as informing her that she could "submit additional medical or vocational information and any facts, data, questions or comments you deem appropriate for us to give your appeal proper consideration." (*Id.*)

After reviewing the letter, the Court finds that the initial denial letter did not provide adequate notice to the plaintiff regarding the specific medical information needed to perfect her claim. The initial denial letter does not clearly indicate whether the plaintiff's claim is being denied because the claim is procedurally deficient as a result of certain required records being missing, or whether it is substantively deficient because the medical condition is not disabling, or both. In short, the Court finds that where there is only one level of appeal available to a claimant, such as in the instant case, the initial denial letter must be precise, unambiguous, and clearly articulate any procedural or medical reasons for the denial. General statements of ineligibility are insufficient.

i. *The initial denial letter is ambiguous*

The initial denial letter is ambiguous regarding what information was reviewed by the Plan Administrator. The letter states, "All available documentation has been carefully reviewed. These records include but are *not necessarily limited to* the following ...." (Def's Opp. Ex. 2 at 258 (emphasis added).) This language can be interpreted two different ways. First, the Plan Administrator might have received information, which was not disclosed to the plaintiff. Second, the Plan Administrator may merely have believed it unnecessary to list all the information reviewed. If the former is true, the claimant would, in effect, be denied the ability to meaningfully appeal.

ii. *The initial denial letter does not provide adequate notice to the plaintiff regarding the specific reasons for denial*

The initial denial letter is not precise regarding what information was needed to perfect the claim. The letter con-

tains four statements as to why the claim was denied.

First, the letter states, "Your medical records indicate that you have had several surgeries and a serious infection post-operatively. At this time, Dr. Bury, the surgeon, has discharged you and will not fill out any paperwork." (Def's Opp. Ex. 2 at 259.) Second, the letter states, "Your primary care physician, Dr. Warwar, is not seeing you for any post-op care. He stated that you're [sic] other medical conditions, hypertension, hyperlipidemia, and coronary heart disease are not disabling." (*Id.*) Third, the letter states, "You would have been eligible for Long Term Disability as of July 8, 1999. Based on this information there does not appear to be any limitations or restrictions that would have prevented you from performing your occupation at American Express as of that date." (*Id.*) Fourth, the letter concludes, "In summary, Ms. Olive, we find the information reviewed does not support a condition of such severity to remove from you the option or choice of returning to your occupation." (*Id.*) These statements do not provide the plaintiff with adequate notice of what additional information is needed to perfect her claim. Moreover, the letter does not indicate whether any of these deficiencies were requirements such that the lack of information in one category rendered the plaintiff's claim deficient.

Instead of the conclusory statements contained in the initial denial letter, the letter should have given the plaintiff detailed notice of these deficiencies, such as what was given in the final letter denying the appeal. For example, the denial of appeal letter provided: (1) a definition of sedentary work criteria; (2) a detailed critique of Dr. Warwar's office notes; (3) a critique of the Los Robles Medical Center records; (4) a detailed explanation of the difference between subjective and objective reports and/or data; and (5) an explanation of the medical evidence necessary to show evidence of disability. Much of this information should have been included in the initial denial letter.

■ ERISA requires adequate, specific notice of the reasons for the denial. *See* 29 U.S.C. § 1133(1). Affording a claimant only a single level of review requires a singularly unambiguous and precise notice. To do otherwise may have the consequence of encouraging the practice of providing marginal notice followed by a detailed and precise final letter denying a claim. As far as reasonably possible, the first denial notice must provide a measure of precision that is commensurate with that of any final notice denying a claim.

Accordingly, the Court finds that the initial denial letter did not provide the plaintiff with adequate notice pursuant to 29 U.S.C. § 1133(1). As such, the Court finds that the plaintiff has provided material, probative evidence of a conflict such that a rebuttable presumption arises that MetLife's decision was in fact a dereliction of its fiduciary responsibilities. Thus, MetLife has the burden of producing evidence to show that the conflict of interest did not affect its decision to deny or terminate benefits.

> b. *MetLife's rebuttal that the conflict of interest did not affect its decision to deny benefits*

Regarding the initial denial letter, MetLife contends that it met its obligations under ERISA by referring to the medical evidence available, informing the plaintiff of the proper appeals process, and specifically inviting the plaintiff to "submit additional medical or vocational information and any facts, data, questions or comments you deem appropriate for us to give your appeal proper consideration." (Def's Opp. at 9.)

In support of its argument MetLife relies on *Jordan,* 63 F.Supp.2d 1145, and *Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279 (9th Cir.1990). However, these cases are distinguishable from the instant case. For example, in *Jordan* the long term disability plan at issue allowed for *two* levels of appeal. 63 F.Supp.2d at 1150–53. Moreover, in response to the plaintiff's first request for appeal, the plan administrator "specifically requested Plaintiff to submit additional medical information which 'supports a condition of total disability.'" *Id.* at 1152. The plan administrator further instructed that the "additional medical documentation should include all objective findings (lab & x-ray results, physical exam findings, etc), and your restrictions and limitations." *Id.* Similarly, in *Madden* the plan provided for *three* appeals. 914 F.2d at 1286.

In the instant case, the Plan allows one opportunity for appeal. Furthermore, the Plan Administrator did not instruct the plaintiff that additional medical documentation should include all objective findings, such as lab and x-ray results. Rather, the initial denial letter concluded with a general overview of the appeal process stating that the plaintiff could "submit additional medical or vocational information and any facts, data, questions or comments you deem appropriate for us to give your appeal proper consideration." (Def's Opp. Ex. 2 at 258.)

MetLife, however, argues that the plaintiff essentially received a second appeal because the additional evidence submitted by the plaintiff was reviewed by her case manager. The Court finds this argument unconvincing. MetLife has established that the Plan does not provide for a second level of appeal. Furthermore, there is no evidence as to how the information was reviewed or pursuant to what standard. The Court, therefore, finds MetLife unable to rebut the plaintiff's showing that the denial of benefits stemmed from MetLife's self-interest.

### c. *Conclusion*

The present motion addresses the standard of review in the instant ERISA case. The Court finds that MetLife's apparent conflict of interest ripened into an actual conflict that affected its decision to deny the plaintiff LTD benefits.

## CONCLUSION

Based on the foregoing analysis, the Court finds that the *de novo* standard applies to the instant ERISA case.

IT IS SO ORDERED.