BARKETT, Circuit Judge,
dissenting:
While I agree with the majority’s discussion of statutory tolling, I do not join the opinion because I believe its discussion of equitable tolling is flawed and imposes an unjust result. The majority’s reasons for finding that Drew is not entitled to equitable tolling have no legal basis and offend basic notions of fair process. I believe the majority’s view of the applicable law is erroneous and accordingly yields a distorted and impoverished conception of this Court’s traditional equitable power.
The majority’s most fundamental error can be stated simply: It denies equitable tolling on the ground that Drew failed to exercise diligence before he was subject to any diligence requirement. The majority *1294 believes that Drew was not diligent between the time he filed his first federal habeas petition in September 1994 and the time he belatedly received the order dismissing it in February 1996. The statute of limitations that Drew now seeks to toll is contained in AEDPA, which was not enacted until two months later, on April 24, 1996. In other words, the majority assumes that Drew must show he was diligent even before the statute of limitations he seeks to toll was enacted into law. That assumption is both wrong and unfair. However, even if it were not, under the facts of this case, the majority reaches the wrong result under its own analysis by concluding that Drew was not diligent and that he is not entitled to an evidentiary hearing on the question of his diligence.
I. The Applicable Law
A statute of limitations contains an inherent element of harshness, since it operates to deprive litigants of the ability to protect their rights simply by the passage of time. See, e.g., Goetz v. Sec’y of Health & Human Servs., 4 Fed.Appx. 827, 830 (Fed.Cir.2001). When certain circumstances prevent a litigant from acting within the statutory period, however, the doctrine of equitable tolling abates this harshness by “stopping the clock” during the time the litigant was unable to act. See Justice v. United States, 6 F.3d 1474, 1475 (11th Cir.1993) (“The doctrine of equitable tolling abates the harsh operation of the statute of limitations under certain circumstances in which barring a plaintiffs potentially meritorious action would be unjust.”); Ellis v. GMAC, 160 F.3d 703, 706 (11th Cir.1998) (“ ‘Equitable tolling’ is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances.”). Equitable tolling adds to the time to file a claim any time during which relevant conditions prevented the plaintiff from acting within the statutory period to preserve his or her rights. As the majority notes, this Court has held in the context of AEDPA’s limitation period that equitable tolling is “appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.” Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir.1999).
As Sandvik indicates, equitable tolling exists to mitigate the harshness of a statute of limitations for a litigant who diligently, but — because of circumstances beyond his control — unsuccessfully, attempted to comply with it. In determining whether equitable tolling is appropriate, a court therefore asks whether the claimant diligently attempted to comply with the statute of limitations. See, e.g., Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (equitable tolling appropriate where claimant filed defective pleading during statutory period); Goldsmith v. City of Atmore, 996 F.2d 1155, 1161 (11th Cir.1993) (same); Flight Attendants Against UAL Offset (FAAUO) v. Comm’r, 165 F.3d 572, 576 (7th Cir.1999) (“a party who wants to appeal to the doctrine' of equitable tolling to excuse a late filing [must] show ... that he tried diligently to file within the deadline or as soon afterwards as possible.”); Husch v. Szabo Food Serv. Co., 851 F.2d 999, 1004 (7th Cir.1988) (plaintiff entitled to equitable tolling because she made a reasonable effort to comply with the Age Discrimination in Employment Act’s limitation period for filing a federal lawsuit). What the majority fails to recognize — but what follows from the fact that equitable tolling is a remedy for a litigant who has diligently attempted to comply with the statute of limitations — is that the diligence Sandvik requires must occur while the statute runs. It matters not if it oc *1295 curs before the statute begins to run, because at that point the clock has not begun to tick; and it matters not if it occurs after the statute has run, because then the clock has already stopped: Both before and after, there is nothing to toll. Simply put, the petitioner’s diligence must correspond to the time he seeks to toll. See Brackett v. United States, 270 F.3d 60, 71 (1st Cir.2001) (candidate for equitable tolling must “act[] with ‘reasonable diligence throughout the period he seeks to toll.’ ” (emphasis added) (citation omitted)); Green v. United States, 260 F.3d 78, 81 (2d Cir.2001) (same).[1]
A statute of limitations, by its own terms, requires a certain amount of diligence, because plaintiffs who do not act diligently to protect their rights run the risk that the time will expire on their ability to do so. It therefore makes obvious sense to say that a plaintiff who did not diligently attempt to comply with the statute of limitations is not entitled to the remedy of equitable tolling. A plaintiff who makes no effort to bring suit within the period allowed by law cannot invoke the court’s equitable power to toll the statute of limitations. See, e.g., Higgins v. Runyon, 921 F.Supp. 465 (E.D.Mich.1996) (plaintiff who did not attempt to comply with Title VII filing deadlines not entitled to equitable tolling); Her by Her v. Sec’y of Health & Human Servs., 33 Fed.Cl. 542 (1995) (plaintiffs who did not diligently attempt to file within statutory period not entitled to equitable tolling). But it.is equally obvious that a plaintiff can neither attempt, nor fail to attempt, to comply with a statute of limitations that does not exist. The question whether a plaintiff made a diligent effort to comply with a non-existent statute of limitations is simply meaningless.
The majority attempts to avoid this absurdity by suggesting that the equitable tolling inquiry is not really concerned with whether the plaintiff made a diligent effort to comply with the statute of limitations he seeks to toll, but with whether the plaintiff was diligent at every time that might conceivably affect his ability to satisfy a later-enacted, unforeseeable and unforeseen, statute of limitations. This suggestion is without legal precedent, and it is unfair because it violates the basic concept of notice: Drew had no way to know that, while he complied with the federal district court’s instruction to exhaust his remedies in state court, federal law would change to impose a statute of limitations on his return to federal court. In essence, the majority’s rule penalizes Drew not for his lack of diligence, but for his lack of clairvoyance.[2]
*1296 It becomes clear that the majority is really ruling against Drew on the basis of his failure to anticipate a future Act of Congress when one considers the law in existence at the time of Drew’s alleged lack of diligence. Before the enactment of AEDPA on April 24, 1996, the right of a prisoner to file a petition for habeas corpus was not subject to any statute’of limitations. See Smith v. Jones, 266 F.3d 1135, 1143 (11th Cir.2001) (explaining that prior to AEDPA, “the law permitted [prisoners] to delay filing for years.”). Although the fact of incarceration may have given prisoners an incentive to seek habeas relief sooner rather than later, they also had obvious reason to take the time necessary to file petitions that presented their claims as effectively as possible. See Aron v. United States, 291 F.3d 708, 712 (11th Cir.2002) (“If prisoners wished to spend more time preparing their petitions — albeit at the potential cost of suffering a longer period of unlawful confinement— the law afforded them that opportunity.”). In short, under pre-AEDPA law, the timing of habeas review was the prisoner’s choice to make. And in reliance on this law, many petitioners had not filed petitions within one year of the date on which their convictions became final, as AEDPA would later require. See Smith, 256 F.3d at 1143.
After AEDPA was enacted, courts were confronted with- the question of how to apply the new law to petitioners whose convictions became final before AEDPA’s enactment and who were now seeking to file a habeas petition more than a year after the date on which the conviction had become final. We answered that question for state prisoners in Wilcox v. Fla. Dep’t of Corr., 158 F.3d 1209 (11th Cir.1998), holding that a one-year grace period for filing a federal habeas petition would apply to those petitioners whose convictions became final before the date of AEDPA’s enactment.[3] We explained that “it would be unfair, and impermissibly retroactive,” to apply AEDPA’s limitation period to prisoners whose convictions became final before the Act’s effective date. Wilcox, 158 F.3d at 1211; Goodman, 151 F.3d at 1337.
In Aron, we followed Goodman and Wilcox in holding that § 2255(4), which states that a petition is timely if filed within one year of “the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence,” is not to be retroactively applied. 291 F.3d at 713. We explained that before the enactment of AEDPA, there was no requirement that a petitioner exercise diligence in discovering new facts in order for a petition based on *1297 those facts to be timely filed. Id. Citing Goodman, we reasoned that “ ‘[i]t would be unfair and impermissibly retroactive’ to require [the petitioner] to have exercised due diligence before there was any legal requirement that he do so,” and therefore held that a petitioner “cannot be penalized for any lack of diligence before AEDPA’s enactment, because at that time there was no requirement that he act diligently.” Id.
In the absence of any statute of limitations, pre-AEDPA law gave prisoners the right to decide the timing of habeas review; thus, the requirement that a prisoner exercise diligence in order to be entitled to equitable tolling of AEDPA’s statute of limitations did not enter the landscape of federal habeas law until AEDPA’s statute of limitations itself was enacted on April 24, 1996. The worst that can be said of Drew’s pre-AEDPA conduct is that he took the time that pre-AEDPA law allowed him. ' That tells us nothing about his entitlement to equitable tolling of the later-enacted statute of limitations. Again, since it is the statute of limitations that the petitioner is seeking to toll, the relevant inquiry is whether the petitioner diligently attempted to comply with the statute of limitations. It is a fundamental principle of equity jurisprudence that we consider only that portion of the litigant’s conduct that has an “immediate and necessary relation” to the remedy sought. See Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933) (“[C]ourts of equity do not make the quality of suitors the test. They apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.”); see also Meis v. Sanitas Serv. Corp., 511 F.2d 655, 657-58 (5th Cir.1975) (equitable relief not barred because the irregularities complained of were not sufficiently related to the subject matter of the suit)[4]; Justice, 6 F.3d at 1480 (noting that “traditional principles of equity jurisprudence” are appropriate in reaching a decision on equitable tolling). Without the delay in Drew’s receipt of the district court’s order of dismissal; he may have been able to file his second federal petition on time; then again, he may not.[5] But apart from any causal uncertainty, there simply is no “immediate and necessary” equitable relation between what Drew did while he was subject to preLAEDPA law, which contained no statute of limitations, and what he did (or could have done) to comply with AED-PA’s statute of limitations once it was enacted. At no point did Drew fail to do *1298 something that he was required to do under the applicable law.
By projecting a diligence requirement back into the law at a time when it contained no statute of limitations, the majority effectively gives AEDPA retroactive application. That is something this Court has consistently held to be impermissible and unfair. See, e.g., Goodman, 151 F.3d at 1337 (“It would be unfair, and impermissibly retroactive, to apply § 2255’s one-year ‘period of limitation’ to federal prisoners ... whose convictions became final prior to the effective date of § 105 of the AEDPA.”); Wilcox, 158 F.3d at 1211 (extending Goodman to § 2254 as well); Smith, 256 F.3d at 1143 (“ ‘[I]t would be unfair and impermissibly retroactive’ to cut off review for noncompliance with a rule that had not existed when the noncompliance occurred.”); Aron, 291 F.3d at 713 (“It would be unfair and impermissibly retroactive’ to require [the petitioner] to have exercised due diligence before there was any legal requirement that he do so.”).
The majority engages in a formulaic recital of the diligence requirement, but by ignoring the temporal context of the events in this case, it .misrepresents and distorts the purpose of equitable tolling. Pre-AEDPA law did not require Drew to act by a certain date, and Drew had no reason to know that Congress would later amend the law to impose a statute of limitations. Consequently, the majority has no equitable basis for refusing to toll the statute simply because it finds that Drew did not act with the diligence that the law would later require of him.[6]
II. Drew’s Alleged Lack of Diligence
Even if Drew had been subject to a statute of limitations during the period the majority focuses on, I would still disagree that the record establishes that Drew was not diligent. The majority is concerned with the period between Drew’s filing of his first federal petition and his return to state court with his renewed motion for state post-conviction relief. Unlike the magistrate (and, by adoption, the district co.urt), the majority’s objection is not that Drew simply waited too long to return to state court, because (as the majority recognizes) Drew claims — and the State does not contests — that he did not receive notice of the dismissal of his federal petition until some ten months after it was actually dismissed.[7] Nor is the majority’s objection *1299 that Drew did not act to ascertain the status of his case, because we know that he received a docket report after writing to the clerk, and a copy of the order of dismissal after writing directly to the presiding judge.[8] Rather, the majority is concerned that Drew did not contact the court soon enough or often enough to ask what was happening with his case.[9] That, in the majority’s view, is the lack of diligence that precludes equitable tolling.
While diligence for a pro se habeas petitioner entails attentiveness to the progress of his case, any duty to inquire with the court regarding the status of one’s case cannot arise before the court is afforded a reasonable time to consider and rule upon the petition; it is, after all, the court’s responsibility to notify litigants when a result has been reached.[10] Cf. Huizar v. Carey, 273 F.3d 1220, 1223 (9th Cir.2001) (“A prisoner who delivers a document to prison authorities gets the benefit of the prison mailbox rule, so long as he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time.”).
In the absence of hindsight, what should we assume was a reasonable period for the adjudication of Drew’s federal petition? The majority does not say, and I cannot discern any basis for its unelaborated finding that Drew was dilatory simply by allowing sixteen months to elapse before inquiring about the status of his case— assuming, for present purposes, that he in fact did nothing for sixteen months. Indeed, the majority’s position is squarely at odds with a prior decision of this Court. In a recent case, we equitably tolled AED-PA’s statute of limitations after finding that the petitioner exercised diligence by inquiring with the court sixteen months after the court had actually denied his *1300 application — in other words, a period longer than Drew waited here. See Knight v. Schofield, 292 F.3d 709 (11th Cir.2002). The majority argues that Knight is distinguishable on the ground that the Clerk informed Knight that he would be notified as soon as a decision was issued. But that is not a crucial piece of information that Drew was missing. Drew had every reason to expect that the court would notify him once it ruled on his petition; every litigant knows that the court is supposed to inform the parties when a result has been reached. Knight, for that matter, was no exception: What he actually asked the Clerk was “when he could expect a ruling.” Id. at 710. The Clerk declined to answer that question, and instead told him what he surely already knew — that he would be notified once the court ruled on his petition. The majority’s suggestion that it would make all the difference to Drew’s case had the Clerk of the district court told him, at the time he filed his petition, that he would be notified of the result is disingenuous.[11]
Sixteen months seems like a long time to the majority in part because Drew’s first federal petition was actually dismissed after six months; and thus some ten months may have elapsed by the time he inquired about his case. However, it is important to bear in mind that his second federal petition was not dismissed until fifteen months had passed, and then it took another fourteen months for Drew simply to obtain a certificate of appealability addressing the timeliness of his petition. Thus, as a general matter, the timing of Drew’s inquiry was not significantly out of line with the progress of his federal proceedings.[12]
Moreover, the fifteen months the court spent on Drew’s second petition — rather than the six months it spent on his first— is closer to the average time the federal district courts require to adjudicate habeas petitions from state prisoners. According to a study conducted by the Bureau of Justice Statistics in 1995, federal habeas petitions involving non-capital homicide convictions and presenting three or more *1301 issues — petitions like Drew’s, in other words — took on average 436 days to resolve; if we take into account the kinds of issues presented, the average rises to as much as 608 days. Roger A. Hanson & Henry W.K. Daley, U.S. Dep’t of Justice, Office of Justice Programs, Bureau of Justice Statistics, Federal Habeas Corpus Review: Challenging State Court Criminal Convictions 23, 25 (1995).[13] Even if we assume that the first time Drew attempted to ascertain the status of his case was in his letter to the district court on January 18, 1996, and do not consider the types of claims presented in his petition, then he waited only 54 days beyond the average date by which a federal court would have ruled on the petition.[14] Once we take into account the types of claims raised, Drew indisputably contacted the court well before the average date on which a federal district court could have been expected to reach a decision on the merits.
A petitioner who contacts the court to inquire about the status of his case before the average time by which a federal district court would have reached a decision has, in my view, acted with all due diligence. Indeed, it would be reasonable to allow the court somewhat longer than the average time before making inquiries. Consequently, we should not conclude that sixteen months was unreasonably long. The majority has identified no basis for its finding (contrary to a prior decision of this Court) that a sixteen month “delay” before contacting the court about the status of the petition constitutes a lack of diligence.[15]
III. The Right to an Evidentiary Hearing
Under the approach I would take to this case, I do not think an evidentiary hearing is necessary, because I would not consider whether Drew was diligent before he was subject to any statute of limitations, and it is clear from the record that, once Drew was subject to AEDPA’s statute of limitations, there was nothing he could have done differently, since his Rule 3.850 motion had already been filed in the state court. And even if, following the majori *1302 ty’s approach, I were to consider Drew’s diligence in the year before AEDPA was enacted, J think the record provides ample evidence that Drew inquired about the status of his case within a reasonable period of time, so once again the equitable tolling issue could be decided without an eviden-tiary hearing. However, the majority has a different, albeit unspecified, conception of what period of time is reasonable, and finds that Drew is not entitled to an evi-dentiary hearing because it believes the record establishes that he was not diligent within that period. I disagree. If I agreed with the majority that sixteen months was too long to wait, I would at least conclude that Drew’s allegations .are sufficient to entitle him to an evidentiary hearing on the question of whether he actually did nothing for sixteen months.
As the majority indicates, we review a district court’s denial of an evidentiary hearing for an abuse of discretion. We have held that a district court abuses its discretion by failing to hold an evidentiary hearing when the petitioner alleges facts that, if true, would entitle him to relief. See, e.g., Kennedy v. Dugger, 933 F.2d 905, 909 (11th Cir.1991); Yordan v. Dugger, 909 F.2d 474, 478-79 (11th Cir.1990). That standard is the same whether the hearing is held on the merits of the petitioner’s claims or on the procedural impediments to review. See Aron, 291 F.3d at 715 (noting that the petitioner’s procedural claim would “entitle him to relief in the form of a timely petition” and finding that the district court abused its discretion in failing to hold an evidentiary hearing).
The magistrate’s report did not acknowledge Drew’s claim that he had not received a copy of the order dismissing his petition, writing only that “Drew allowed more than a year to elapse before he returned to the state forum and attempted to exhaust his unexhausted claims.... ” Magistrate’s Report and Recommendation at 10. As a result, the report was concerned not with whether Drew had been diligent in inquiring about the status of his case, but with whether he diligently followed up on the order of dismissal, assuming he received it shortly after it was entered on March 28, 1995.[16] In his objections to that report, Drew therefore sought to make clear that he did not receive a copy of the order until February 20, 1996, attaching a prison official’s response to his mail record request showing no incoming mail from, the district court after March 13, 1995. Drew also stated in his objections that he wrote “several letters of inquiry” and that the clerk “ignored, or disregarded the ‘Status Checks’ on Petitioner’s case for a while” until the docket report was sent on January 24, 1996.
The majority recognizes that Drew intended the prison mail record to support his claim that he did not receive timely notice of the district court’s order of dismissal, rather than that he diligently monitored the status of his case. But the majority argues nonetheless that an evidentiary hearing could not help him because “the same document that would support the claim that he did not receive the order would almost certainly defeat any claim that he sent repeated letters to the Clerk of the Court.” That is incorrect. The majority simply assumes that Drew would be unable to explain any omissions from the list of legal mail or adduce any proof that he made other inquiries.[17] It is important to bear in mind *1303 that Drew had only ten days to respond to the magistrate’s report, which recommended dismissing his petition for a different reason than the one the majority now considers dispositive. We simply don’t know what Drew could prove if he had knowledge of what he needed to prove and more than ten days in which to gather his proof.
The majority also faults Drew for not proffering all the evidence that he would present if his request for an evidentiary hearing were granted. But that is not what the law requires. It is the allegations that determine whether there should be an evidentiary hearing, and it is in that hearing that the petitioner is required to furnish proof. See Aron, 291 F.3d at 715 n. 6. Drew alleges that he sent several “letters of inquiry” to the clerk of the court, and that his “status checks” were ignored. If he could prove that he did so, he would be entitled to relief even on the majority’s theory of the case. Accordingly, the majority should have found that the district court abused its discretion in failing to hold an evidentiary hearing.
IV. Conclusion
The majority’s erroneous preoccupation with events predating AEDPA’s enactment prevents it from even considering the real issue in this case. The only time Drew could possibly toll is the time the state courts spent adjudicating his third Rule 3.850 motion, because that is only time in the long course of this case that there was a statute of limitations to toll. But the majority has nothing to say about this period. It does not consider whether Drew was diligent during the time he seeks to toll, but as discussed above, that it is clearly the relevant question to ask about his diligence. See Brackett v. United States, 270 F.3d 60, 71 (1st Cir.2001) (candidate for equitable tolling must “aet[ ] with ‘reasonable diligence throughout the period he seeks to toll.’ ” (emphasis added) (citation omitted)); Green v. United States, 260 F.3d 78, 81 (2d Cir.2001) (same). The majority also does not consider that Drew was in state court because the district court instructed him to exhaust his remedies there, without giving him the opportunity to proceed in 1995 with only his exhausted claims.[18] Nor does it consider *1304 that the State, having argued in federal court that Drew would not be procedurally barred from refiling in state court, reversed its position in the state forum and asserted that Drew’s Rule 3.850 motion was procedurally barred both as successive and untimely.[19] And it does not consider that the state proceedings took longer than AEDPA’s newly enacted limitation period, in part because the State apparently asked for repeated extensions of time to file while the statute ran.[20]
The Supreme Court has admonished that procedural rules do not exist to “ ‘trap the unwary pro se prisoner.’ ” Slack v. McDaniel, 529 U.S. 473, 487, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (quoting Rose v. Lundy, 455 U.S. 509, 520, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)). The majority pays lip service, to this principle while retroactively imposing an obstacle course so complex (and in which the obstacles shift in mid-course) that the outcome was a foregone conclusion. Having ignored everything possibly relevant to Drew’s equitable tolling claim, the majority denies relief on the ground that Drew did not — but in any event, is not entitled to — prove that he complied with a standard that did not exist at the time he allegedly failed to comply with it. I dissent.

. The Irwin Court stated: "We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.” 498 U.S. at 96, 111 S.Ct. 453 (citation omitted) (emphasis added). Clearly, it makes sense to refer to a need to "preserve” one’s legal rights only when they are at risk of expiration. When no statute of limitations is running, a claimant does not have to do anything to "preserve” his or her rights.

. That is why the historical survey offered by the majority in footnote 5 is beside the point. No one has questioned whether equitable tolling has always imposed an attendant obligation to make a diligent effort to comply with the statute of limitations; the only question is whether the claimant may sensibly be considered subject to that obligation prior to the enactment of the statute of limitations that he later seeks to toll. The majority cites one case, Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), for the proposition that "equitable tolling” is not limited to diligent parties "because of the existence of any statutory requirements...." The flaw in the majority's argument is that Holmberg was not an equitable tolling case; it was a case in which the defendant asserted a laches defense. Since the point of laches is that it may function to bar suit even in the absence of a statute of limitations, obviously a laches defense is not tied to the existence of a statute of *1296 limitations. After the passage quoted by the majority, the Holmberg Court wrote: "Equity has acted on the principle that 'laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced — an inequity founded upon some change in the condition or relations of the property or parties.' ” 327 U.S. at 396, 66 S.Ct. 582 (quoting Galliher v. Cadwell, 145 U.S. 368, 373, 12 S.Ct. 873, 36 L.Ed. 738 (1892)). Surely the majority cannot mean to suggest that Drew's alleged lack of diligence rises to a level that would support a laches defense — particularly when, in state court, Florida reversed its position on the issue of procedural bar and then asked for repeated extensions of time to file while the statute was running on Drew's ability to protect his rights in federal court. If we were really to balance the equities in this case, we would find that the change in conditions — the enactment of AEDPA and Florida's reversal of its position in state court and requests for extensions of time — prejudiced Drew, and therefore supports his argument for equitable relief. In any event, Holmberg offers no support for the majority's novel argument that the remedy of equitable tolling of a statute of limitations is not tethered to the existence of that statute of limitations.

. We had already answered the question the same way for federal prisoners in Goodman v. United States, 151 F.3d 1335 (11th Cir.1998).

. In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

. Contrary to the majority’s assertion that Drew’s alleged "lack of diligence ultimately prevented [him] from filing the instant federal petition” on time, there is in fact no certainty that, had Drew done everything the majority demands of him, he would have been able to file his federal petition within the one-year limitation period. Since the time it takes to reach a decision can vary widely, often depending on factors beyond the individual case (such as the court’s workload and schedule), there is no guarantee that Drew would have been able to file his federal petition on time merely by commencing his state proceedings earlier. Had the state courts taken longer to adjudicate his motion, he might still have been unable to file his federal petition within AEDPA’s one-year period. Thus, we cannot say whether the delay in Drew’s receipt of the order of dismissal was a “but for” cause of his inability to file his federal petition on time. I also note that, had the state courts been able to adjudicate Drew's motion more quickly— for example, had the State not requested and received three extensions of time to file— Drew would have been able to file the present federal petition on time notwithstanding the delay in the receipt of the order dismissing the first federal petition.

. I also note that the State, having urged the district court to require Drew to exhaust state remedies (that it then argued in state court were procedurally barred) — and, as Drew points out, having requested and received three extensions of time in state court — may not now claim undue prejudice from our decision to grant equitable tolling. See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) ("absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified”); Raziano v. United States, 999 F.2d 1539, 1542 (11th Cir.1993) (same).

. It appears that the magistrate’s report (which the district court adopted) either simply overlooked or plainly ignored Drew's claim that he did not receive a copy of the order of dismissal. The magistrate wrote that "Drew allowed more than a year to elapse before he returned to the state forum and attempted to exhaust his unexhausted claims....” Magistrate’s Report and Recommendation at 10. Although the majority suggests that it can find no "clear error” in the district court's conclusion that Drew was not diligent, it is hard to imagine a clearer error than the court ignoring the fact that Drew did not receive timely notice of the court’s dismissal.
I also note that the magistrate, like the majority, held Drew to AEDPA’s standards before it was enacted: "Thus, by the time Drew acted on this court's dismissal without prejudice of his first § 2254, a period of time longer than the AEDPA’s limitations period had already passed.... The new one-year limitations period in the AEDPA is aimed at curtailing just such dilatory practices.” Id. *1299 In other words, the magistrate observed that AEDPA was enacted after the alleged “dilatory practice” in this case, but nonetheless ruled against Drew because, before AEDPA's enactment, “a period of time longer than the AEDPA’s limitations period had already passed.” In my view, that is a legal error that would vitiate the district court’s factual finding even if that finding were not itself clearly erroneous.

. The majority writes that Drew’s claim of diligence rests on “one letter.” That cannot be right. The majority itself notes that two letters (one to the clerk, and one to the presiding judge) were documented in response to a request Drew filed with prison officials; moreover, Drew's letter of January 30 explains that he had just received a docket report indicating that his case was dismissed in response to a letter of inquiry sent on January 18, 1996. In other words, even in the absence of an evidentiary hearing, there is reason to believe that Drew sent at least three letters regarding the status of his case.

. We have previously held that equitable tolling is appropriate where there has been a delay in the prisoner's receiving notice of a court’s resolution of his or her case. See Knight v. Schofield, 292 F.3d 709 (11th Cir.2002).

. If litigants were required to inquire about the status of their case before giving the court a reasonable period to reach a decision and notify them of the result, court personnel would be faced with a substantial administrative burden. For example, in the year 2000, 58,257 prisoner petitions were filed in the U.S. district courts. See John Scalia, U.S. Dep’t of Justice, Office of Justice Programs, Bureau of Justice Statistics, Prisoner Petitions Filed in U.S. District Courts, 2000, with Trends 1980-2000 1 (2002). Under the majority's approach, the failure of all of these prisoners to make inquiries about the progress of their cases subjects them to a risk of being found indiligent and thus ineligible for equitable tolling should any statute of limitations problem subsequently arise. Were all of these prisoners to do what the majority says Drew should have done — send letters, make phone calls, and have relatives go to the court personally to make inquiries — the court clerks would be considerably busier than they already are. And of course, since equitable tolling may apply to a wide variety of lawsuits, the effect of the majority’s reasoning is not confined to petitions filed by prisoners.

. The majority does not acknowledge that Knight waited considerably longer than Drew before contacting the court to inquire about his case. The majority does note that two other circuits have also found equitable tolling appropriate where the petitioner receives late notice of the disposition. See Woodward v. Williams, 263 F.3d 1135, 1143 (10th Cir.2001); Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir.2000). Nonetheless, the majority argues that the present case is distinguishable because Drew did not diligently attempt to ascertain the status of his petition. However, the Tenth and Fifth Circuit cases cited by the majority report no efforts whatsoever by these petitioners to ascertain the status of their petitions. Thus, if Drew's case is distinguishable, it is distinguishable on the ground that Drew did inquire with the court regarding the status of his case — and sooner than the petitioner did in Knight.

. If it had been the first petition that took fifteen months to resolve, sixteen months would not seem so long, because Drew would have waited only one month longer than the time the court had actually spent adjudicating the petition. Or suppose that when Drew inquired after sixteen months, he was informed that the court had not yet reached a decision, and the court then issued its decision a month later. I do not believe the majority would construe Drew’s failure to have made inquiries before sixteen months had elapsed, even though the court had not yet reached a decision, as a lack of diligence that would preclude equitable tolling in the future. But in both of these hypotheticals, Drew does exactly what he did in this case; as I shall explain, the only difference in these examples is that the court resolves the case in a time closer to the average time the federal district courts spend on habeas petitions from state prisoners. But if we would not find Drew dilatory when the timing of the court’s decision making was closer to the average and thus more in line with the timing of Drew's inquiry, we cannot find him dilatory just because the district court happened to resolve his first petition more quickly.

. Among the sample cases in the study, those involving a claim of prosecutorial misconduct took on average 608 days to resolve; those involving Fifth Amendment claims took 560 days; those involving ineffective assistance of counsel claims took 555 days. Id. at 23. Drew’s petition included all three kinds of claims. While petitions dismissed on procedural grounds were generally resolved in less time than those decided on the merits, a petitioner of course cannot know prospectively on what basis the court will rule.

. Of course, the most reasonable assumption for a petitioner who has not heard anything about the status of his case within a couple of months after the average date on which a court would have reached a decision is that his petition is taking longer than average to resolve, not that the court has neglected to inform him about the disposition of his case. For example, ten percent of the habeas cases in the Bureau of Justice Statistics study took more than 761 days — in other words, over two years — to resolve. Id. at 20.

. Again, the majority claims that it can find no "clear error” in the district court's determination that Drew was not diligent. But as noted earlier, see supra note 7, the magistrate's report (which the district court adopted) overlooked or ignored Drew’s claim regarding the delay in receiving the notice of dismissal. That was clear error. But rather than remanding for a consideration of the actual facts by the district court, the majority then engages in a "de novo review of the facts,” deciding that, even if Drew did not receive any notice about the disposition of his case, he still was not diligent because he did not inquire about the status of his case soon enough. The majority's conclusion, offered with no reasoning, is clearly erroneous because, as I explained in the text, the timing of Drew's inquiry was in line both with the average time federal courts spent on similar habe-as petitions and with the general progress of his own federal proceedings.

. In other words, what Drew must prove in order to be entitled to equitable tolling has been a moving target. For the magistrate, it may have been enough for Drew to show that he did not receive the order, but the majority thinks Drew should have offered proof of his efforts to obtain a copy of the order. I also note that the State did not raise the question of Drew’s diligence when it discussed the timeliness of his petition.

. For example, Drew may not have marked the letters of inquiry as legal mail. The mail- *1303 room documentation on which the majority relies is clearly incomplete, because it makes no mention of the January 18 letter, or of the January 24 docket report (which was also attached as an exhibit to Drew's objections), or even of the copy of the order of dismissal, which Drew notes was sent through the regular (as opposed to legal) mail. We also do not have a copy of the actual mail record; rather, the "record” we possess is a handwritten response on Drew's "Inmate Request" form.

. The Ninth Circuit has held that equitable tolling is appropriate where a district court, in violation of Rose v. Lundy, 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), dismisses a partially unexhausted habeas petition outright without providing the petitioner an opportunity to amend or resubmit the petition to present only the exhausted claims, with the result that the post-exhaustion federal petition is untimely under AEDPA. See Tillema v. Long, 253 F.3d 494, 503 (9th Cir.2001). Moreover, as the majority observes in footnote 8, the timeliness problems in this case could have been avoided had the district court retained jurisdiction over Drew's first petition and held that petition in abeyance while the unexhausted claims were pursued in the state court — an approach that a number of circuits have endorsed. See Delaney v. Matesanz, 264 F.3d 7, 14 n. 5 (1st Cir.2001); Zarvela v. Artuz, 254 F.3d 374, 380-82 (2d Cir.2001) (endorsing retention of jurisdiction during remand over petitions containing both exhausted and unexhausted claims); Freeman v. Page, 208 F.3d 572, 577 (7th Cir.2000) (same); Calderon v. United States Dist. Ct., 134 F.3d 981, 988 (9th Cir.1998) (same); but see Graham v. Johnson, 168 F.3d 762, 778-80 (5th Cir.1999) (holding that mixed petitions should be dismissed, not held in abeyance).

. As the federal magistrate wrote in her report, the State specifically argued that it would not be futile to require Drew to refile in state court "because Florida authorities hold that denials of post-conviction motions on the ground of facial insufficiency are without prejudice to the movant's ability to refile his claims.” Magistrate's Report and Recommendation at 6 (citing Flint v. State, 561 So.2d 1343, 1344 (Fla.Dist.Ct.App.1990); Long v. State, 555 So.2d 434, 435 (Fla.Dist.Ct.App.1990)). In its brief to this Court, Florida suggests that its about-face in state court'is explained by Drew’s unanticipated omission of an allegation from his third state motion that the facts on which it was based were previously unknown to him or his attorney and could not have been ascertained by the use of due diligence — an allegation that would have saved his motion from the timeliness requirements of Rule 3.850. But that is clearly not what the State argued in the federal district court hearing Drew’s first petition; it argued that a new state motion would not be procedurally barred because Drew’s previous motion had been dismissed on grounds of "facial insufficiency.” Moreover, even if the omission of Drew's allegation could explain the State's new position on the timeliness of his motion, it does not explain why the State changed its mind about whether a renewed motion would be procedurally barred as successive.
The change in-Florida's position made all the difference to the timeliness of Drew's federal petition. AEDPA was enacted the day after Drew filed his state motion. If the court had not determined that the motion was procedurally barred as untimely, Drew would have been entitled to statutory tolling of AED-PA's limitation period while the motion was pending in state court.

. Drew contends that the progress of the state proceedings was impeded because the State requested and received three extensions of time to file a response to his motion for rehearing. According to Drew, on September 17, 1996, the trial court directed the State to respond to his motion for rehearing, but as a result of the extensions granted, the State did not file its response until February 24, 1997— over five months later.